**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| PAJOJE DEVELOPMENT, LLC, | ) |
| | ) |
| Plaintiff, | ) Case Number _____ 20-cv-4948 |
| | ) |
| v. | ) |
| | ) |
| JOHN DOE(S), | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## <u>COMPLAINT</u>

Pajoje Development, LLC ("Pajoje" and "Plaintiff"), by and through their undersigned counsel, states as follows for its Complaint against the John Doe Defendant(s) (the "Doe Defendant(s)" or "Defendants"):

### <u>PRELIMINARY STATEMENT</u>

1. This matter involves the manipulation of the S&P 500 options market trading at the Chicago Board Options Exchange ("CBOE"), a national options exchange that is a wholly-owned subsidiary of Cboe Global Markets, Inc. ("CGM") and is operated by CGM's affiliate, the Chicago Board Options Exchange, Inc. ("CBOEI"). On August 24, 2015, the Doe Defendant(s) engaged in an illegal form of market manipulation known as "spoofing" in the S&P 500 options markets. The term "spoofing" refers to, among other things, the manipulative practice of entering bid or offer orders with the intent to cancel those orders before execution (these orders are hereinafter referred to as "Deceptive Orders"). An example of spoofing includes entering orders to create artificial price movements upwards or downwards. This practice enabled the Doe Defendant(s) to

1

manipulate the market to their benefit, and to the detriment of Pajoje and other market participants. This Complaint seeks to recover the financial losses Pajoje suffered as a direct result of the Doe Defendant(s) illegal activity.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and Section 10(b) of the Exchange Act (15 U.S.C. § 78aa).

3.     Venue is proper in this District pursuant to Section 10(b) of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), (c), and (d), because the acts, practices, and courses of conduct constituting the violations alleged in this Complaint occurred within the jurisdiction of the United States District Court for the Northern District of Illinois, for which the Doe Defendant(s) used the means and instrumentalities of interstate commerce, including, but not limited to, the facilities of the national securities markets. The illegal activity described in this Complaint occurred on the CBOE, a national options exchange located in Chicago, Illinois.

## PARTIES

4.     Plaintiff Pajoje is a hedge fund trading in, *inter alia*, weekly S&P 500 options traded on the CBOE under the symbol SPX, SPXW, and SPXPM.

5.     Plaintiff does not know the identity of the Doe Defendant(s) because trading on the CBOE platform is anonymous.  For that reason, Plaintiff also does not know the precise number of Doe Defendant(s).  Moreover, allegations as to the Doe Defendants' entry of orders are made on information and belief because the actual identity of the entity entering the orders is not known to Pajoje.  The Doe Defendant(s) are persons or entities that trade on the CBOE.  CBOE requires all parties who trade on the exchange to identify themselves by the submission of a unique operator identification.  Therefore, CBOE, CGM, and/or CBOEI are able to specifically identify the Doe

2

Defendant(s) and Plaintiff will be able to obtain the Doe Defendant(s)' identities through discovery. Plaintiff will request leave to amend this Complaint and identify the Doe Defendant(s) upon learning the identity of the Doe Defendant(s).

**THE DOE DEFENDANT(S)' SPOOFING ON AUGUST 24, 2015**

6.     The Doe Defendant(s) accomplished their spoofing activity by submitting Deceptive Orders to the CBOE which they intended to cancel before execution. By submitting Deceptive Orders, the Doe Defendant(s) lured other market participants, including Pajoje, into selling option contracts below, or buying contracts above, what would otherwise be the prevailing market price.

7.     On August 24, 2015, the stock market opened down sharply. The Dow dropped roughly 1,100 points, or over 5%, in the first five minutes of trading. As a result of the steep decline, trading in many stocks was delayed. Based on information and belief, only about half of S&P 500 stocks were opened on the NYSE within the first five minutes of trading, and 765 stocks in the Russell 3000 were down more than 10% within the first fifteen minutes. This activity is commonly referred to as a "flash crash."

8.     The "flash crash" of the opening minutes of August 24, 2015 caused dislocation within the market for S&P 500 options, as market makers pulled back from the S&P 500 option market. Based on information and belief, many S&P options had no bid and ask information for significant periods during the first fifteen to twenty minutes of trading. As a result, the Doe Defendant(s) exploited the "flash crash" and engaged in the spoofing conduct at issue in this case.

9.     The Doe Defendant(s) Deceptive Orders included placing both a bid and an ask for a given option contract, which would establish a deceptive midpoint for the market. Then, generally in mere milliseconds, the Doe Defendant(s) would cancel these orders, returning the

3

market to a state where there was no bid or ask. By canceling the orders within milliseconds, the Doe Defendant(s) insured that their orders could affect market participants, but would not execute. However, these Deceptive Orders created the false appearance of a midpoint in the market and of market movement in a certain direction (either higher or lower). The Doe Defendant(s) knew that some parties enter orders to be executed at the "market midpoint," and so by creating a false midpoint with their Deceptive Orders, the Doe Defendant(s) would cause that limit order to be entered well outside the rational price for that option, based upon its fundamental characteristics. The Doe Defendant(s) could then execute that order, generating significant profits for themselves at the expense of the party who unknowingly entered an order well outside of the rational price for that option.

10.     The CBOEI operates an electronic trading platform to facilitate trading at the CBOE. That platform displays to Pajoje and other market participants the current bid and ask prices for all options traded on the CBOE. The best available bid is the highest available price for buy orders in the market, and the best available ask is the lowest available price for sell orders.

11.     A party who enters an order at the market midpoint will place an order at the midpoint between the bid and the ask. As a result of the Doe Defendant(s) Deceptive Orders, a limit order at the midpoint will be placed at a price that bears no rational relationship to the value of the option based upon its fundamental characteristics, because the Doe Defendant(s) have created a false midpoint based on bid and ask orders that they have no intention to execute.  The result is that the Doe Defendant(s) are able to induce and then execute midpoint orders by unwitting market participants.  This allows the Doe Defendant(s) to buy option contracts at prices lower than, or sell option contracts at prices higher than the rational prices for the underlying option contracts without their Deceptive Orders.

4

### SPECIFIC EXAMPLES OF THE DOE DEFENDANT(S)' SPOOFING

12.     Upon information and belief, based on the unique pattern and the short time frame for the entry of the simultaneous bid and ask orders, between 8:36:31 and 8:39:29 A.M. on August 24, 2015 in the S&P 500 weekly index option market (ticker symbol SPXW) for the contract expiring on August 28, 2015 at a strike price of 2015, one of the Doe Defendants entered sixty (60) simultaneous bid and ask orders.  All but four (4) of these orders were canceled in less than a second, and none were outstanding for two seconds. None of these orders was executed.

13.     Also, upon information and belief based on the unique pattern and the short time frame for the entry of the simultaneous bid and ask orders, between 8:36:31 and 8:39:29 A.M. on August 24, 2015 in the S&P 500 weekly index option market (ticker symbol SPXW) for the contract expiring on September 4, 2015 at a strike price of 1960, one of the Doe Defendants entered seventy-seven (77) simultaneous bid and ask orders.  All but five (5) of these orders were canceled in less than a second, and none were outstanding for two seconds. None of these orders was executed.

14.     Further, on information and belief based on the unique pattern and the short time frame for the entry of the simultaneous bid and ask orders, between 8:34:42 and 8:39:29 A.M. on August 24, 2015 in the S&P 500 weekly index option market (ticker symbol SPXW) for the contract expiring on September 11, 2015 at a strike price of 1790, one of the Doe Defendants entered one-hundred twenty three (123) simultaneous bid and ask orders.  All but nine (9) of these orders were canceled in less than a second, and none were outstanding for two seconds. None of these orders was executed.

15.     Further, on information and belief based on the unique pattern and the short time frame for the entry of the simultaneous bid and ask orders, between 8:36:31 and 8:39:29 A.M. on

August 24, 2015 in the S&P 500 weekly index option market (ticker symbol SPXW) for the contract expiring on August 28, 2015 at a strike price of 2010, one of the Doe Defendants entered eighty (80) simultaneous bid and ask orders. All but seven (7) of these orders were canceled in less than a second, and none were outstanding for two seconds. None of these orders was executed.

16.     Further, on information and belief based on the unique pattern and the short time frame for the entry of the simultaneous bid and ask orders, between 8:36:31 and 8:39:29 A.M. on August 24, 2015 in the S&P 500 weekly index option market (ticker symbol SPXW) for the contract expiring on September 4, 2015 at a strike price of 1955, one of the Doe Defendants entered seventy-six (76) simultaneous bid and ask orders. All but six (6) of these orders were canceled in less than a second, and none were outstanding for two seconds. None of these orders was executed.

17.     Further, on information and belief based on the unique pattern and the short time frame for the entry of the simultaneous bid and ask orders, between 8:36:31 and 8:39:29 A.M. on August 24, 2015 in the separate S&P 500 weekly index option market (ticker symbol SPXW) for the contracts expiring on September 4, 2015 at the strike prices of 2010, 2020, and 2025, one or more of the Doe Defendants entered seventy-seven (77) simultaneous bid and ask orders on each of those contracts. All but six (6) of these orders on each of the contracts were canceled in less than a second, and none were outstanding for two seconds. None of these orders was executed.

18.     Further, on information and belief based on the unique pattern and the short time frame for the entry of the simultaneous bid and ask orders, between 8:34:42 and 8:39:29 A.M. on August 24, 2015 in the S&P 500 weekly index option market (ticker symbol SPXW) for the contract expiring on September 11, 2015 at a strike price of 1885, one of the Doe Defendants entered one-hundred and nineteen (119) simultaneous bid and ask orders. All but eleven (11) of

these orders were canceled in less than a second, and none were outstanding for two seconds. None of these orders was executed.

19.     Further, on information and belief based on the unique pattern and the short time frame for the entry of the simultaneous bid and ask orders, between 8:34:42 and 8:39:29 A.M. on August 24, 2015 in the S&P 500 weekly index option market (ticker symbol SPXW) for the contract expiring on September 11, 2015 at a strike price of 1990, one of the Doe Defendants entered one-hundred and thirty (130) simultaneous bid and ask orders.  All but ten (10) of these orders were canceled in less than a second, and none were outstanding for two seconds. None of these orders was executed.

20.     Finally, upon information and belief, based on the unique pattern and the short time frame for the entry of the simultaneous bid and ask orders, between 8:30:18 and 8:39:29 A.M. on August 24, 2015 in the S&P 500 weekly index option market (ticker symbol SPXW) for the contract expiring on September 25, 2015 at a strike price of 1995, one of the Doe Defendants entered twenty (20) simultaneous bid and ask orders.  All but one (1) of these orders were canceled in less than a second. None of these orders was executed.

21.     Exhibit A to this Complaint identifies the Deceptive Orders that Pajoje has identified in paragraphs 12 through 20.

22.     Although the Deceptive Orders described in paragraphs 12 through 20 did not execute, these orders created a false midpoint in the respective markets for the options and did directly induce Pajoje to place limit orders on each of these contracts at the midpoints created by the Deceptive Orders. These orders were at prices far in excess of the rational prices for the option contracts at issue based upon their fundamental characteristics.  As a result, Pajoje sustained millions of dollars in damages from these induced trades.

23.     In addition, the losses on these induced trades deprived Pajoje of further opportunities in CBOE's S&P 500 options market, resulting in significant additional financial losses.

24.     Based upon information and belief, Pajoje believes that the Doe Defendant(s) may have engaged in many more Deceptive Orders than those identified in Exhibit A, both on August 24, 2015 and on other days where the market presented similar opportunities.

### COUNT ONE: VIOLATION OF 15 U.S.C. § 78A, ET SEQ., MANIPULATION IN VIOLATION OF RULE 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10B-5 PROMULGATED THEREUNDER.

25.     Pajoje hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

26.     By reason of the conduct described above, the Doe Defendant(s), directly or indirectly, acting intentionally, knowingly or recklessly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce or a national securities exchange: (a) employed devices, schemes, or artifices to defraud; and (b) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

27.     The Doe Defendant(s) acted with scienter, in that they knowingly or recklessly placed Deceptive Orders with the intent to induce other market participants to place bids at artificial prices, thereby enriching the Doe Defendant(s) and harming market participants like Pajoje.

28.     Pajoje relied on an assumption of an efficient market free of manipulation. Like other investors, Pajoje believed they were trading in competitive markets with prices driven by supply and demand.

29.     The Doe Defendant(s) fraudulent scheme caused damages to Pajoje, which lost money on the fraudulently induced trades at artificial prices.  As a direct and proximate result of the Doe Defendant(s) Deceptive Orders, Pajoje has suffered damages in connection with these transactions.

30.     Each of the Deceptive Orders identified on Exhibit A constitutes separate and independent violations of the Securities laws.  Based upon information and belief, Pajoje believes that the Doe Defendant(s) engaged in many more Deceptive Orders than those identified on Exhibit A, each of which would constitute a separate and independent violation of the Securities laws.

31.     By reason of the foregoing, the Doe Defendant(s) violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

### COUNT TWO: VIOLATION OF ILLINOIS BLUE SKY LAWS.

32.     Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

33.     By reason of the conduct described above, the Doe Defendant(s) have violated 815 ILCS § 5/12 by having, *inter alia*,: (a) engaged in a transaction, practice, and/or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof; and (b) employed a device, scheme, and/or artifice to defraud in connection with the sale or purchase of a securities, directly or indirectly.

34.     The Doe Defendant(s) each participated and/or aided in the sales and purchases of securities at issue in this complaint to the detriment of Pajoje.

35.     Accordingly Pajoje asserts that the Doe Defendant(s) are liable to Pajoje pursuant to 815 ILCS § 5/13.

## JURY DEMAND

36.     Pajoje demands trial by jury on all issues so triable.

## PRAYER

WHEREFORE, Plaintiff Pajoje Development, LLC prays for judgment in its favor and against Doe Defendant(s) for compensatory damages, punitive damages, attorney's fees, and for all such other relief as this Court deems fair and just.

Respectfully submitted,

*/s/ Alexander Loftus*_____
Alexander Loftus, Esq.
David Eisenberg, Esq.
Loftus & Eisenberg, Ltd.
161 N. Clark St., Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
C: 312.772.5396
alex@loftusandeisenberg.com
david@loftusandeisenberg.com

Jason W. Burge (*pro hac vice pending*)
SBN (LA) 30420
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
jburge@fishmanhaygood.com
***Counsel to Pajoje Development, LLC***