UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KESSEV TOV, LLC, | ) | |
| | ) | Case No. 20-cv-04947 |
| Plaintiff, | ) | |
| | ) | Hon. LaShonda A. Hunt |
| v. | ) | |
| | ) | |
| JOHN DOE(S), | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| PAJOJE DEVELOPMENT, LLC, | ) | |
| | ) | Case No. 20-cv-04948 |
| Plaintiff, | ) | |
| | ) | Hon. LaShonda A. Hunt |
| v. | ) | |
| | ) | |
| JOHN DOE(S), | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Kessev Tov, LLC ("Kessev Tov") and Pajoje Development, LLC ("Pajoje"), (collectively, "Plaintiffs") sued certain John Doe Defendants, alleging that their actions during a stock market "flash crash" in August 2015 violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Section 12 of the Illinois Securities Laws of 1953 ("ISL"). Although these cases were filed as separate actions, they are related cases that this Court considers together. Now before the Court are the motions of Defendants John Does A and D (collectively, "Defendants") to dismiss Plaintiffs' second amended complaints for failure to state a claim under

1

the Exchange Act or ISL.[1] For the reasons that follow, Defendants' motions (Case No. 20-cv-04947, Dkt. 52; Case No. 20-cv-04948, Dkt. 50) are denied in part and granted in part.

## BACKGROUND

The Court presumes familiarity with the June 30, 2022 Opinion dismissing Plaintiffs' complaints with leave to amend that were entered by the previously assigned District Judge.[2] (Case No. 20-cv-04947, Dkt. 38; Case No. 20-cv-04948, Dkt. 41, hereinafter the "June 2022 Opinion".) Theses cases involve trading for put options, which give the holder of the option the right to sell an asset for a certain price (the strike price) on or before a specific expiration date. Plaintiffs are hedge funds that traded on the Chicago Board Options Exchange ("Cboe") and Defendants are anonymous market participants in the same exchange.

On August 24, 2015, the stock market opened down sharply with approximately half of the S&P 500 index stocks opening during the first five minutes of trading; this phenomenon is known as a "flash crash." During that volatile period , many market makers in the S&P 500 index option market pulled back to the point where many of those options had no bid or ask information for the first fifteen or twenty minutes of trading. Plaintiffs allege Defendants took advantage of the vacuum created by the lack of market makers by simultaneously placing offers to buy put options ("bids") and offers to sell put options ("asks") that Defendants never intended to execute and cancelling them within milliseconds. This allegedly created the illusion of falsely high options prices and artificially inflated the market price of the relevant S&P 500 index options.[3] Plaintiffs maintain Defendants' "spoofing" created a false market midpoint for S&P 500 index options,

---

[1] John Doe B was dismissed from the case on November 28, 2022. (Case No. 20-cv-04947, Dkt. 72.) Thus, this Order pertains to defendants John Doe A and John Doe D only.
[2] These related cases were reassigned to the calendar of Judge Hunt on June 2, 2023.
[3] Plaintiffs focus on the market midpoint price. The market midpoint is the middle price between the bid and ask price for an option.

thereby causing some market participants to execute midpoint bid orders that were well outside the rational price for those options. According to Plaintiffs, Defendants could then execute on the other side of those orders, generating profits by selling the artificially inflated put options. However, Plaintiffs have not identified any such orders executed by Defendants, presumably because Plaintiffs are unaware of Defendants' identities. Plaintiffs claim they lost millions of dollars because Defendants' actions caused them to close out their positions at these highly distorted market midpoints.

In the June 2022 Opinion, Judge Coleman granted Defendants' motion to dismiss without prejudice, finding that rapidly placing and cancelling orders, by itself, did not amount to market manipulation. The decision identified two areas where Plaintiffs' amended complaint needed additional facts: (1) how the cancelled orders demonstrated a plan to deceive and (2) how the midpoint prices resulting from Defendants' alleged actions were fundamentally irrational in a period of extreme market volatility. (June 2022 Opinion at 19.) Specifically, Plaintiffs had not "alleged any facts to establish what the prevailing market price would have been for the options involved in the at-issue transactions" and "[m]erely label[ed] prices irrational because they were higher during a period of volatility" without demonstrating why that was the case. (*Id.* at 19–20 (internal citation omitted).)

In response to the June 2022 Opinion, Plaintiffs filed their second amended complaints ("SAC"), supplementing their initial allegations with charts, tables, and a declaration from a market making expert to bolster their claims that Defendants' conduct led to irrational prices and evinced a plan to deceive. Plaintiffs added context on basic trading option theory to demonstrate what is typically considered rational trading behavior. According to Plaintiffs, put options protect the owner of the option from a decline in the S&P 500 index. As a result, the value of a put option

(which Plaintiffs equate with the market midpoint) should increase as the underlying S&P 500 index decreases. Plaintiffs also assert that the value of a put option increases when the market is more volatile because more volatile markets lead to higher expected payoffs. Consequently, the market midpoint generally increases as the volatility index increases. Plaintiffs further allege that put options with higher strike prices and longer expiration dates are considered more valuable and that the price for put options should increase as strike prices and expiration dates increase.

Plaintiffs' then apply these general principles to show why Defendants' bids were, in fact, irrational. The SAC highlights analysis from a market making expert who reviewed bidding data for options on August 24, 2015, at various strike prices and expiration dates. Plaintiffs identify orders placed by John Does A and D that are allegedly irrational as a matter of option theory when compared to other orders placed on August 24, 2015. For example, Plaintiffs allege that when comparing the market midpoint to the underlying S&P 500 index value for a single put option, all other bids on August 24, 2015 follow a tight linear relationship consistent with the aforementioned option theory (where the market midpoint decreased as the S&P 500 index increased), but that Defendants bids were at a much higher price than what would have been expected. Similarly, when comparing the market midpoint to a volatility index, all other bids for certain S&P 500 index options on August 24 followed a tight linear relationship consistent with option theory (where the market midpoint increased as the volatility index increased), and yet Defendants' bids were at a much higher price than this linear relationship would have predicted. Therefore, Plaintiffs assert, Defendants spoofing bids were irrationally high as a matter of option theory.

Plaintiffs also allege that Defendants' bidding behavior was selective and inconsistent with market making activity. Their expert explained that market makers generally place both bids and asks (two-sided bids) for all strike prices and all expirations for a given option. Plaintiffs point

4

out that for specific S&P 500 index options at certain expiration dates, Defendants only bid at a few strike prices as opposed to all strike prices. They also highlight that, for certain S&P 500 index options at specific strike prices, Defendants only bid on a few expiration dates rather than all expiration dates. Because Defendants did not act consistently with ordinary market making activity and placed bids at irrationally high prices, Plaintiffs maintain that Defendants' actions demonstrated a plan to deceive and constituted market manipulation under the Exchange Act and ISL.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529–30, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). To survive a motion to dismiss, a Plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the Plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Because Plaintiffs' Section 10(b) and ISL claims sound in fraud, they must also meet the heightened pleading requirements of Rule 9(b). *Last Atlantis Cap. LLC v. Chi. Bd. Options Exchange, Inc.*, 455 F. Supp. 2d 788, 793 (N.D. Ill. 2006) (Bucklo, J.) (citing *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 280–81 (7th Cir. 1996)) ("[B]oth SEC Rule 10b-5 and Fed. R. Civ. P. 9(b) require that Plaintiffs plead these claims of fraud with particularity.");

5

*ABN AMRO, Inc. v. Cap. Int'l Ltd.*, 595 F. Supp. 2d 805, 831 (N.D. Ill. 2008) (Dow, J.) (state fraud claims must comply with Rule 9(b)). In alleging fraud, the Plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). According to the Seventh Circuit, "[t]his means the who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

The Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) ("PSLRA"), imposes further pleading requirements on § 10b-5 claims. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14, 320–21, 127 S. Ct. 2499, 168 L. E. 2d 179 (2007). Section (b)(2) of the PSLRA requires a Plaintiff asserting a manipulation claim under subsections (a) and (c) of Rule 10(b)-5, as here, to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect to each manipulative act performed. 15 U.S.C. § 78u-4(b)(2).

## **DISCUSSION**

Defendants contend Plaintiffs fail to state a claim under the Exchange Act or ISL, and in the alternative, that the ISL claim must be dismissed because Plaintiffs have not alleged a remedy available under the Act. The Court addresses each contention in turn.

### I.     **Exchange Act Claim**

To state a market manipulation claim under the Exchange Act, Plaintiffs must allege "(1) manipulative acts, (2) damage, (3) caused by reliance on an assumption of an efficient market free of manipulation, (4) scienter, (5) in connection with the purchase or sale of securities, (6) using the mail or any national securities exchange facility." *In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 390 F. Supp. 3d 916, 928–29 (N.D. Ill. 2019). Here, Defendants challenge Plaintiffs' allegations regarding manipulative acts, scienter, and loss causation.

### A. Manipulative Acts

Defendants assert Plaintiffs' new allegations do nothing to save its claim and that Plaintiffs have again failed to allege any manipulative act. As discussed in the June 2022 Opinion, market manipulation claims are rooted in deception, where investors are duped "into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators." *DH2, Inc. v. Athanassiades*, 404 F. Supp. 2d 1083, 1092 (N.D. Ill. 2005) (internal citation omitted). To determine whether trading activity is legitimate, courts look to whether the alleged manipulator injected inaccurate information into the market. *See, e.g., In re Olympia Brewing Co. Sec. Litig.*, 613 F. Supp. 1286, 1292 (N.D. Ill. 1985).

First, Defendants argue that Plaintiffs failed to demonstrate a plan to deceive because they have done no more than allege that Defendants quickly entered and cancelled orders. The June 2022 Opinion held that such activity, by itself, is insufficient to state a market manipulation claim. To be clear, activity need not be illegal to qualify as a manipulative act; "[m]arket manipulation can be accomplished through otherwise legal means . . . such as short sales, and large or carefully time purchases or sales of securities." *See CP Stone Fort Holdings, LLC v. John Doe(s)*, No. 16 C 4991, 2016 WL 5934096, at *5 (N.D. Ill. Oct. 11, 2016). When a Plaintiff alleges that normal market activity constitutes manipulative conduct, "[t]o be actionable as a manipulative act, [the activity] must be willfully combined with something more to create a false impression of how market participants value a security." *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007).

The Court finds that Plaintiffs now allege "something more" than just rapidly entering and cancelling orders and have sufficiently alleged spoofing. *Id.* Admittedly, this case differs from past spoofing cases, which have involved, for example, "parking" or "layering" large "baiting"

orders behind legitimate orders to shift the market before quickly canceling those orders and executing smaller trades on the opposite side of the baiting orders after the market moved in a favorable direction. *See, e.g.*, *Harrington Global Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, 585 F. Supp. 3d 405, 417 (S.D.N.Y. 2022). However, the Court sees no reason to limit spoofing to only those circumstances already presented in the case law. Spoofing is "bidding or offering with the intent to cancel the bid or offer before execution." *United States v. Coscia*, 866 F.3d 782, 786–87 (7th Cir. 2017). Spoofing is simply one type of manipulative act, and, as discussed above, the hallmark of a manipulative act is whether it was intended to inject inaccurate information into the market. *See, e.g., In re Olympia Brewing Co. Sec. Litig.*, 613 F. Supp. at 1292. While "layering" or "parking" bids may be one way of proving spoofing, there is no case law that holds it is the only way to do so. If a party bids with the intent to cancel the bid or before execution to artificially inflate the market, that activity is a manipulative act.

This case is also necessarily distinct from other spoofing cases because Defendants were allegedly main players in the market at the time the orders were placed.[4] As a result, there were no other participants behind whom Defendants could park their allegedly manipulative bids. Under Plaintiffs' theory, Defendants entered irrationally high bids that lasted for only milliseconds, thereby rendering them inexecutable, in order to signal artificially high prices (and midpoints) and induce others to trade at those artificially high prices. Plaintiffs have provided numerous exhibits plausibly suggesting that Defendants' actions were irrational and contradictory to ordinary market making behavior *alongside* their allegations that Defendants quickly entered and canceled the orders. This is the "something more" required of Plaintiffs to sufficiently allege

---

[4] Although both parties' in their briefs mention that Plaintiffs' theory is Defendants were the only participants in the market during the operative period, this fact is not apparent from the SAC itself or its exhibits. However, the SAC does suggest that John Does A and D were, at the very least, predominant players in the market on the morning of August 24, 2015. The Court will therefore refer to them as such for purposes of this Order.

a market manipulation claim. These allegations adequately alleged manipulative acts on the part of Defendants.

Defendants argue this was not spoofing because the sizes of the bids and asks in the exhibits are relatively small and were equal on both sides of the market. But even if the orders entered were relatively small, because it was not an active market, these allegedly deceptive orders could still have great effect. Defendants also argue that Plaintiffs' allegations show that Defendants acted consistently with market making activity. They contend that offering two-sided quotes and cancelling high volumes of previously made orders as prices change on the market is typical market making activity. While that may ultimately prove to be true, at this stage of the litigation the Court is required to take all allegations in the complaint as true and draw all reasonable inferences in favor of Plaintiffs. As discussed above, there is a second plausible explanation for Defendants' activity described in Plaintiffs' SAC—namely that Defendants were attempting to take advantage of the market conditions created by the flash crash by placing and canceling irrationally high bids to artificially inflate the price of S&P 500 index put options so Defendants could profit. Because this behavior allows the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged, the dismissal is not warranted.

The Court next considers Defendants' argument that Plaintiffs have not pointed to any order Defendants executed to prove that they took advantage of an allegedly distorted stock price. How, Defendants ask, can Plaintiffs plausibly allege that Defendants intended to engage in market manipulation if Plaintiffs cannot show Defendants profited from the deception? Plaintiffs contend that because Defendants are still anonymous, Plaintiffs are at a major disadvantage as they do not know the entirety of Defendants' trading activity.[5] Plaintiffs assert that under those circumstances,

---

[5] Plaintiffs further claim that, without discovery, they have no way to know if Defendants placed the trades on which Plaintiffs closed their positions. Defendants dispute that contention and argue that Plaintiffs do have this

they face a lower burden for pleading scienter and manipulative acts, and that their allegations are therefore sufficient. *See, e.g., Harrington Global Opp. Fund, Ltd. v. CIBC World Markets Corp.*, 585 F. Supp. 3d 405, 418 (S.D.N.Y. 2022) (discussing how in early stages of a case, manipulation need not be pled to the same degree of specificity as a misrepresentation claim) (internal citation omitted).

Due to this concern, some courts have found that Plaintiffs can sufficiently plead market manipulation if they "plead with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the Defendants." *ATSI Comm's.*, 493 F.3d at 102. This Court finds here that Plaintiffs have alleged "Defendants communicated an 'artificial or phony price of a security' to persons who, in reliance upon a misrepresentation that the price was set by market forces, purchase the securities," which supports a market manipulation claim. *See CP Stone Fort Holdings, LLC v. John Doe(s)*, No. 16 C 4991, 2017 WL 1093166, at *4 (N.D. Ill. Mar. 22, 2017) (citing *Fezzani v. Bear, Stearns & Co., Inc.*, 716 F.3d 18, 25 (2d Cir. 2013)). As discussed below, Plaintiffs adequately pleaded that the prices were irrational – and thus artificial – and that Plaintiffs then closed out their options at these highly distorted prices. In the end, Plaintiffs' claims may be doomed if they are unable to prove Defendants profited from the alleged market manipulation, as it would be difficult to prove intent to deceive if Defendants did not make money off their alleged spoofing. However, at this stage of the litigation, and given Defendants' anonymity, the Court finds that the claims survive the motion to dismiss.

Second, Defendants argue that Plaintiffs did not show that Defendants' bids injected inaccurate information into the market. Defendants claim that their bids provided "stability and

---

information. Without seeing the data, this Court again cannot tell who is right. Reviewing the original subpoena, it is unclear if Plaintiffs would have been provided this type of data at all. Nonetheless, the Court finds that the remainder of the allegations support intent such that this dispute need not decide the issue. In sum, the Court finds Plaintiffs have alleged a plan to deceive.

10

rationality" to the marketplace because Defendants supplied prices at a time when there was no otherwise available information. Once again, this is simply an alternate interpretation of the facts that may or may not prove to be true as this case progresses. However, it is not a valid ground for dismissing a complaint when other plausible interpretations of the same facts reasonably imply that Defendants' activity constituted market manipulation. Indeed, the Court does not find this argument persuasive, as simply being the only price in the market does nothing to refute the claim that the injected price was irrational. Market makers were not acting at all—perhaps *not* acting at a time of market instability was the rational action.

Defendants next claim that the charts provided by Plaintiffs merely show that prices were higher in the morning than the prices set later in the day, a proposition previously rejected in the June 2022 Opinion. But this Court disagrees. The charts demonstrate a pattern of bids disconnected from other bids, suggesting those bids were irrational as a matter of option theory. (*See* Case No. 20-cv-04948, Dkts. 44-2–44-23.)[6]

Lastly, Defendants contend that prices fell over the course of bidding, which is consistent with typical market making activity. This price drop, however, could still reflect artificial prices. Similarly, Defendants reiterate that their actions were consistent with option theory because their two-sided bids increased along with the underlying strike prices. Again, this could be true, but it still does not mean that the bids *themselves* were an accurate representation of supply and demand. Because the SAC sufficiently demonstrates how and why the injected prices were artificial as a matter of option theory – as bolstered by the expert declaration – the Court finds Plaintiffs have sufficiently alleged a manipulative act.

---

[6] Defendants raise for the first time in their reply brief that the VIX and S&P indices underlying these charts are based on stale data, and thus should not be trusted. But because Plaintiffs did not have a chance to respond to this issue, the argument is waived for purposes of ruling on these motions to dismiss. *See, e.g., Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009).

### B. Scienter

Defendants next contend that Plaintiffs failed to plead a "strong inference" of scienter, as required by the PSLRA. To allege a violation of the Exchange Act, "the complaint must plead with particularity facts giving rise to a strong inference that the defendant intended to deceive investors by artificially affecting the market price of securities." *ATSI Comms.*, 493 F.3d at 102. "A Plaintiff can plead a strong inference of scienter by alleging facts showing either: (1) a motive and opportunity to commit fraud or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *In re Chicago Bd. Options Exch.*, 390 F. Supp. 3d at 933.

Defendants argue Plaintiffs have not alleged any facts suggesting strong circumstantial evidence of conscious misbehavior. They argue that because Plaintiffs have not alleged any of the traditional hallmarks of spoofing, the conduct alleged does not support an inference of intent to manipulate the market. But as discussed above, the Court finds that the SAC provides such an inference. *See, e.g., CP Stone Fort Holdings*, 2017 WL 1093166, at *4 ("[I]t is difficult to identify any other factual allegation that Plaintiff could add, particularly since it does not know Defendants' identities."). Consequently, the Court holds that Plaintiffs have adequately alleged scienter and does not consider the parties' arguments regarding whether Plaintiff alleged a motive and opportunity to commit fraud.

### C. Loss Causation

Lastly, Defendants maintain that Plaintiffs have not alleged loss causation. "A private Plaintiff bringing a claim for securities fraud must prove that the defendant[s]' fraud caused an economic loss." *In re Chicago Bd. Options Exch.*, 390 F. Supp. 3d at 931. Consequently, "[a]llegations that a Plaintiff purchased a security at an inflated price, alone, are insufficient to state a misrepresentation claim." *Id.* at 931–32.

Defendants argue that Plaintiffs have failed to allege how their losses resulted from Defendants' conduct and not simply the flash crash. The Court is not persuaded. The SAC alleges that Defendants' conduct before 9:00 am on August 24, 2015 specifically resulted in higher prices, and that Plaintiffs were forced to close out their positions shortly thereafter. Then, once the spoofing bids were no longer the predominant bids on the market, the prices for options dropped. This is sufficient at this juncture to allege loss causation.

## II. ISL Claim

Finally, Defendants argue that Plaintiffs' ISL claims should be dismissed because Plaintiffs have no available remedy. Plaintiffs allege that the Defendants violated 815 ILCS 5/12 and request compensatory damages, punitive damages, and attorneys' fees. But only rescission and injunctive relief are available under this Act. 815 ILCS 5/13. Defendants claim that because Plaintiffs do not seek this relief, there is no available remedy and the claim should be dismissed. Plaintiffs do not directly address this argument. Because Plaintiffs have not alleged the relief requested in the statute, the Court will dismiss the ISL claim without prejudice.

## CONCLUSION

For the foregoing reasons, this Court grants in part and denies in part Defendants' motions to dismiss. (Case No. 20-cv-04947, [52]; Case No. 20-cv-4948, [50].) Defendants must respond to the surviving count of the Second Amended Complaint within 30 days. The parties must also provide the Court with a status report within 21 days that details how they intend to proceed with the case, particularly as to revealing Defendants' identities.

**IT IS SO ORDERED.**

Date: July 27, 2023

Entered: *LaShonda A. Hunt*
United States District Judge, LaShonda A. Hunt,

13